## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANNA BOYD as Guardian and Next Friend of O.G., , BRIDGET LAWRENCE as Guardian and Next Friend of C.L., and LATOYA LAWRENCE as Guardian and Next Friend of J.C., individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> LIGHTRICKS LTD. <br><br> Defendant. | Case No. 1:22-cv-6362 <br><br> Judge: Hon. Martha Pacold <br><br><br> **JURY TRIAL DEMANDED** |

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs Anna Boyd, Bridget Lawrence, and LaToya Lawrence ("Plaintiffs") bring this action on behalf of their minor children, and all others similarly situated against Defendant Lightricks Ltd. ("Lightricks" or "Defendant"). Plaintiffs make the following allegations based upon information and belief, except as to allegations specifically pertaining to herself, which are based on personal knowledge.

## NATURE OF THE ACTION

1.      This is a class action suit brought against Defendants for violations of the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq*. Defendant developed, owns, and operates a mobile application and website, Facetune ("Facetune" or the "App", used inclusively for all variants referenced *infra*), that collects biometric information.

2.      Facetune was launched in March 2013, and its successor app Facetune 2 was launched in November 2016. Defendant also previously developed, owned, and operated a mobile

1

application named Facetune Video in 2020 which functioned along similar lines[1], also collecting biometric information.

3. Currently, the capabilities of Facetune 2 and Facetune Video have been rolled into one app, named "Facetune Editor".[2]

4. Lightricks states that on the App "we scan all your images in your camera roll, and we may collect and process information on the. . . location and characteristics of faces or other face parts (eyes, lips, etc.) that appear in an image or video, and the number, estimated age and gender of people in the image or video."[3]

5. Plaintiff brings this action for damages and other legal and equitable remedies resulting from the illegal actions of Defendant in collecting, storing, and using their and other similarly situated individuals' biometric identifiers[4] and biometric information[5] (referred to collectively at times as "biometric data"). Defendant failed to establish a retention and deletion schedule for Plaintiff's biometric data when it was in possession of the same, failed to procure Plaintiff's consent before it collected, captured, or otherwise obtained Plaintiff's biometric data, and failed to procure Plaintiff's consent before it disclosed or otherwise disseminated Plaintiff's biometric data.

6. The Illinois Legislature has found that "[b]iometrics are unlike other unique identifiers that are used to access finances or other sensitive information." 740 ILCS 14/5(c). "For

---

[1] *See* https://techcrunch.com/2020/07/28/facetune-maker-lightricks-brings-its-popular-selfie-retouching-features-to-video/, last accessed September 21, 2022

[2] https://apps.apple.com/us/app/facetune-editor-by-lightricks/id1149994032, last accessed September 21, 2022.

[3] https://static.lightricks.com/legal/privacy-policy.pdf, last accessed September 19, 2022.

[4] "Biometric identifier[s]" include fingerprints, voiceprints, iris scans, and face geometry, among other things.

[5] "Biometric information" is any information captured, converted, stored or shared based on a person's biometric identifier used to identify an individual.

example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions." *Id.*

7. In recognition of these concerns over the security of individuals' biometrics, the Illinois Legislature enacted BIPA, which provides, *inter alia*, that private entities such as Defendant may not obtain and/or possess an individual's biometrics unless they: (1) inform that person in writing that biometric identifiers or information will be collected or stored; (2) inform that person in writing of the specific purpose and length of term for which such biometric identifiers or biometric information are being collected, stored, and used; and (3) receive a written release from the person for the collection of his or her biometric identifiers or information. *See* 740 ILCS 14/15(b)(1)-(3).

8. Moreover, entities possessing biometric identifiers and biometric information must publish publicly available written retention schedules and guidelines for permanently destroying biometric identifiers and biometric information. *See* 740 ILCS 14/15(a).

9. As alleged below, Defendants' practices of collecting, storing, using, and possessing individuals' biometric identifiers (specifically, voice prints) and associated biometric information violated BIPA §§ 15(a) and 15(b).

10. In direct violation of § 15(b) of BIPA, through the App, Defendant collected, stored, and used—without first obtaining adequate informed written consent—the biometric data of thousands of Illinoisans, including Plaintiffs.

11. Plaintiffs are Illinois residents and their minor children whose biometric data was uploaded to the App by themselves or other Illinois residents in Illinois from Illinois IP addresses.

Through this process, Defendant collected Plaintiffs' biometric data, including their facial geometry, facial features, and expressions.

12.    Defendant failed to obtain adequate written consent from Plaintiffs to collect, capture, or otherwise obtain Plaintiffs' biometric data.  Plaintiffs were not on notice that their biometric data would be collected and provided to third parties, nor did Plaintiffs consent to the same.  Defendant did not procure a "written release" executed by Plaintiffs for the collection of their biometric data.

13.    Finally, in violation of BIPA, Defendant failed to keep a written retention schedules and guidelines for permanently destroying biometric identifiers and biometric information. .

14.    BIPA confers on Plaintiffs and all other similarly situated Illinois residents a right to know of the risks that are inherently presented by the collection and storage of biometric data, and a right to know how long such risks will persist after ceasing using Defendant's App.

15.    Yet, Defendant failed to obtain Plaintiffs' or the Classes' informed written consent before collecting their biometric data, and failed to procure consent to disclose their biometric data.

16.    Plaintiffs bring this action to prevent Defendant from further violating the privacy rights of Illinois residents and to recover statutory damages for Defendant's improper collection, storage, and disclosure of these individuals' biometric data in violation of BIPA.

## **PARTIES**

17.    Plaintiff Anna Boyd is, and has been at all relevant times, a resident of Springfield, Illinois and has an intent to remain there, and is therefore a domiciliary and citizen of Illinois.  She is the mother and legal guardian of O.G., whose biometrics were captured by Defendant's App without consent or proper publication of a retention schedule by Defendant.

18.    Plaintiff Bridget Lawrence is, and has been at all relevant times, a resident of

Bourbonnais, Illinois and has an intent to remain there, and is therefore a domiciliary and citizen of Illinois. She is the mother and legal guardian of C.L., whose biometrics were captured by Defendant's App without consent or proper publication of a retention schedule by Defendant.

19.     Plaintiff LaToya Lawrence is, and has been at all relevant times, a resident of Kankakee, Illinois and has an intent to remain there, and is therefore a domiciliary and citizen of Illinois. She is the mother and legal guardian of J.C., whose biometrics were captured by Defendant's App without consent or proper publication of a retention schedule by Defendant.

20.     Defendant Lightricks Ltd. is an Israeli company headquartered in Jersulsalem, Israel. Lightricks develops, owns, and operates the App on both iOS and Android platforms, which is used throughout Illinois.

## JURISDICTION AND VENUE

21.     This Court has supplemental jurisdiction over this controversy pursuant to 28 U.S.C. § 1332(d), Plaintiff's claims and the claims of the other members of the Class exceed $5,000,000 exclusive of interest and costs, and there are numerous Class members who are citizens of states other than Defendants' states of citizenship.

22.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) and (c) because a substantial part of the events or omissions giving rise to Plaintiff and the Class's claims occurred in this District and because Defendants transact business and/or have agents within this District.

## FACTUAL ALLEGATIONS

**I.      Illinois' Biometric Information Privacy Act**

23.     The use of a biometric scanning system entails serious risks. Unlike other methods of identification, facial geometry is a permanent, unique biometric identifier associated with an individual. This exposes individuals to serious and irreversible privacy risks. For example, if a

device or database containing individuals' facial geometry data is hacked, breached, or otherwise exposed, individuals have no means by which to prevent identity theft and unauthorized tracking.

24.     Recognizing the need to protect citizens from these risks, Illinois enacted the Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA") in 2008, to regulate companies that collect and store biometric information, such as facial geometry. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276.

25.     BIPA is an informed consent statute which achieves its goal by making it unlawful for a company to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it *first*:

> informs the subject … in writing that a biometric identifier or biometric information is being collected or stored … and [] receives a written release executed by the subject of the biometric identifier or biometric information.

740 ILCS 14/15(b)(1), (3).

26.     Further, "[n]o private entity in possession of a biometric identifier or biometric information may disclose, redisclose, or otherwise disseminate a person's or a customer's biometric identifier or biometric information unless the subject of the biometric identifier or biometric information … consents to the disclosure or redisclosure." 740 ILCS 14/15(d)(1).

27.     As alleged below, Defendants violated § 15(b) of BIPA by failing to obtain a written release from the individuals authorizing the collection of their biometric data, and violated § 15(d) of BIPA by failing to procure the consent of individuals to disclose or otherwise disseminate their biometric data.

**II.      Defendant Violates BIPA**

28.      Defendant developed, owns, and operates the App, which is one of the most popular mobile applications on iOS and Android devices.  As of June 2019, the App had spent more than 1500 days as the number one paid app in the Apple App Store.[6]

29.      Initially, Facetune was sold as a $3.99 single download before moving to a subscription-based service in 2016.  The App now costs up to $9.99 per month or $59.99 per year, depending on the features to which the user subscribes.

30.      As a result, Defendant has made millions of dollars from Illinois residents in the sales and subscription for its services.

31.      To sign up for a subscription, Illinois users sign up directly through the App and remit payment from Illinois.  Each of these subscriptions automatically renews and continually sends payment to Defendants from Illinois.

32.      At all relevant times, Defendant offered the App and the subscription to the Illinois market.  Defendant likewise directly targets and contracts with Illinois residents who sign up for said subscription.

33.      Defendant also knows where its App users are located because Defendant collects users' IP addresses when they use the App.

34.      Defendant purposely exploited the Illinois market by (1) offering the App for download to Illinois citizens; (2) scanning, collecting, or otherwise extracting the user's facial patterns, facial features, and expressions of Illinois residents; and (3) knowingly selling its subscription to Illinois citizens.

---

[6] *See* https://sensortower.com/blog/number-one-apps, last accessed September 19, 2022.

35.     The App uses "complex algorithms" which capture facial geometry – though the App is careful to avoid using this specific phrase – in order to "easily remove blemishes, improve complexions and perform other sophisticated manipulations on their own photos using their smartphones – corrections that would otherwise take an experienced Photoshop user to carry out via a desktop computer."[7]

36.     Users of the App select photos from their own phones and use the features of the App to "whiten teeth, smoothen skin, add more detail to the face, change the shape, . . .patch up imperfections on the skin, fix red-eye, blur the background like in professional headshots, and much more."[8]

37.     As a reviewer from The Huffington Post stated, "The result of a few minutes of 'Facetuning' a picture, is not a whole new look and feel but rather a picture that makes you or the person in the picture, look that much better. It is the small things, the subtle things that make this app so unique."[9]

38.     When a user has selected which photo they want to use, the App scans the photo using its artificial intelligence—including scanning, collecting, or otherwise extracting the user's facial patterns, facial features, and expressions—in order present options to the user for editing. Once the App "processes" the photo (*i.e.*, scans and collects the user's facial features), the user can make edits or "Facetunes" to the picture as he or she sees fit.

39.     Defendant determines the parameters for marketing the App on the Apple App Store, and in doing so, Defendant prominently represents that it is appropriate for ages 4 and older:

---

[7] https://www.jpost.com/In-Jerusalem/Jerusalem-oftech-478258, last accessed September 21, 2022
[8] https://www.huffpost.com/entry/facetune-is-an-ios-photoe_b_3501920, last accessed September 21, 2022
[9] *Id.*



# Facetune Editor by Lightricks

Photo & Video Editing

  

| 217K RATINGS | AGE | CHART | DEVEL |
|:---:|:---:|:---:|:---:|
| **4.6** | **4+** | **#12** | |
| ★★★★★ | Years Old | Photo & Video | Lightric |

# Events

**NOW AVAILABLE**



**MAJOR UPDATE**
Facetune just got AI art!
AI image generator to make selfie backgrounds

# What's New

Version History

40.    Lightricks' Privacy Policy states (in page 10 of a 113-page policy) that children under the age of 13 may not use the services.[10]  However, at no point must a user either agree to the Privacy Policy to use the App nor must a user even review it.

41.    Instead, new users who download the App are *encouraged* to read the Privacy Policy, but instead of a requirement that the user agree to it, the user need only simply click on a button that says, "Got It":

---

[10] https://static.lightricks.com/legal/privacy-policy.pdf, last accessed September 21, 2022.



42.     At no point is the user giving informed consent to the App for the collection of biometrics.  Further, the Privacy Policy contains no written retention or destruction policy for the use and preservation of biometrics.

43.     Additionally, Defendant has knowingly advertised the App as suitable for children, and as such, has not included a mechanism for obtaining verifiable consent from the parents of children, such as Plaintiffs.

44.     Similarly, Defendant's Terms of Use require binding arbitration, seek to bind all users of Lightrick's Apps to New York law and courts, and contain a class action waiver[11].

45.     However, when logging in to the App for the first time via an iPhone, a user is asked several questions about their desired uses for the App, a user is then given the option of signing in to the App by using one of three methods: their Apple account, a Facebook account, or Google account.  Below those toggles, in very small letters, the user is then informed that, "By using Facetune, you agree to our Terms of Use, Privacy Policy, and to receive offers and updates."

---

[11] *See* https://static.lightricks.com/legal/terms-of-use.pdf, last accessed September 26, 2022.



46.     The user is not directly asked to agree to the Terms of Use, nor is there a pop-up or "clickwrap" notification, request to the user to view the Terms of Use, nor any other method by which a user of the App would be aware of the existence of the Terms of Use other than by the notification that by signing in ***using a different platform's sign-in*** makes the user potentially subject to the Terms of Use.

47.     BIPA covers technology that captures, collects, or possesses "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry" and technology based on these identifiers that is "used to identify an individual." 740 ILCS 14/10.

48.     When users download and use the App or sign up for a subscription, they are never asked to agree to Defendant's Privacy Policy. Thus, users never consent to Defendants' Privacy Policy, including Defendant's collection of biometric data.

49.     Accordingly, Defendant violated BIPA § 15(b) by (i) failing to inform users that their biometric data is being collected, stored, and used, and (ii) failing to procure a prior "written release" (*i.e.*, prior consent) from users for the collection of their biometric data.

50.     Defendant also violated BIPA § 15(a) by failing to maintain a written retention schedule for users' biometric data, stating:

> We retain your personal data for as long as it is reasonably necessary to provide you with our Services and to maintain and expand our relationship; to comply with our legal and contractual obligations; or to protect ourselves from any potential disputes (e.g. as required by laws applicable to log-keeping, records and bookkeeping, and in order to have proof and evidence concerning our relationship, should any legal issues arise following your discontinuance of use), all in accordance with applicable laws and regulations. Please note that for many of our Services, Users may not use an App for a certain amount of time and still expect us to retain their personal data, such as their account information and photos.[12]

51.     Defendants' failure to comply with BIPA's basic consent and disclosure requirements was reckless.

### III.   Experiences of Plaintiffs

52.     Plaintiff Anna Boyd is an Illinois domiciliary and resident.

---

[12] https://static.lightricks.com/legal/privacy-policy.pdf, last accessed September 21, 2022.

53.     Plaintiff's child, O.G., on numerous occasions used the App to edit photos of himself, most recently on or about May 2021.  O.G. was 13 years old at the time he most recently used The App to edit photos of himself.

54.     Plaintiff Bridget Lawrence is an Illinois domiciliary and resident.

55.     Plaintiff's child, C.L., has, on numerous occasions, used the App to edits photos of himself (which continues as of the time of this writing).  C.L. has done so since 2021 and is currently four years old.

56.     Plaintiff Latoya Lawrence is an Illinois domiciliary and resident.

57.     Plaintiff's child, J.C. has used the App numerous times (and continues as of the time of this writing) to use the App to edit pictures of herself.  Plaintiff has done so since approximately 2018, when she was 10 years old.

## CLASS ALLEGATIONS

58.     Plaintiffs bring this case as a class action under Federal Rule of Civil Procedure 23(b)(2) and (b)(3) on behalf of the following Class: All Illinois residents whose biometric data was captured, collected, received, or otherwise obtained and/or stored by Defendants through the App during the applicable statute of limitations period (the "Class").

59.     Alternately, Plaintiffs bring this case as a class action under Federal Rule of Civil Procedure 23(b)(2) and (b)(3) on behalf of the following Class: All minor Illinois residents whose biometric data was captured, collected, received, or otherwise obtained and/or stored by Defendants through the App during the applicable statute of limitations period (the "Minor Subclass").

60.     The Class and the Alternate Class may collectively be referred to as The Classes.

61.     **Numerosity:**  At this time, Plaintiffs do not know the exact number of members of the aforementioned Classes.  However, given the size of Defendant's business and the number of

Illinois users of the App, the number of persons within the Classes is believed to be so numerous that joinder of all members is impractical.

62.     **Commonality and Predominance:**  There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Classes that predominate over questions that may affect individual members of the Classes include:

> (a) whether Defendant collected or otherwise obtained Plaintiffs' and the Classes' biometric identifiers and/or biometric information;

> (b) whether Defendant developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of their last interaction, whichever occurs first;

> (c) whether Defendant destroyed Plaintiffs' and the Classes' biometric identifiers and/or biometric information once that information was no longer needed for the purpose for which it was originally collected; and

> (d) whether Defendant's violations of BIPA were committed intentionally, recklessly, or negligently.

63.     **Typicality:**  Plaintiffs' claims are typical of those of the Classes because Plaintiffs, like all members of the Classes, used the App, and had their biometric data recorded and improperly stored by Defendant in violation of BIPA.

64.     **Adequate Representation:** Plaintiffs have retained and are represented by qualified and competent counsel who are highly experienced in complex consumer class action litigation. Plaintiffs and their counsel are committed to vigorously prosecuting this class action. Moreover, Plaintiffs are able to fairly and adequately represent and protect the interests of the Classes.  Neither Plaintiffs nor their counsel have any interest adverse to, or in conflict with, the interests of the absent members of the Classes.  Plaintiffs have raised viable statutory claims of the type reasonably expected to be raised by members of the Classes, and will vigorously pursue those

claims. If necessary, Plaintiffs may seek leave of this Court to amend this Class Action Complaint to include additional representatives to represent the Classes, to include additional claims as may be appropriate, or to amend the definition of the Classes to address any steps that Defendant took.

65. **Superiority:** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Classes is impracticable. Even if every member of the Classes could afford to pursue individual litigation, the Court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and of the court system and protects the rights of each member of the Classes. Plaintiffs anticipate no difficulty in the management of this action as a class action. Class-wide relief is essential to compliance with BIPA.

**FIRST CLAIM FOR RELIEF**
**FOR DAMAGES AGAINST DEFENDANT**
**VIOLATION OF 740 ILCS 14/15(A)**
**(By Plaintiffs on Behalf of the Class or, in the Alternative, the Minor Subclass)**

66. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

67. Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Defendant.

68. BIPA mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention – and, importantly, deletion – policy. Specifically, those companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (at most three years after the

company's last interaction with the individual); and (ii) actually adhere to that retention schedule and actually delete the biometric information. *See* 740 ILCS 14/15(a).

69. Defendant failed to comply with these BIPA mandates.

70. Defendant is a corporation and does business in Illinois and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

71. Plaintiffs are individuals whose "biometric identifiers" were uploaded to Defendant in Illinois and possessed by Defendant, as explained in detail in above. *See* 740 ILCS 14/10.

72. Plaintiffs' biometric identifiers were used to identify Plaintiffs and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS 14/10.

73. Defendant failed to publish a publicly available retention schedule or guidelines for permanently destroying biometric identifiers and biometric information as specified by BIPA. *See* 740 ILCS 14/15(a).

74. Defendant lacked retention schedules and guidelines for permanently destroying Plaintiffs' and the Classes' biometrics. As such, the only reasonable conclusion is that Defendant has not, and will not, destroy Plaintiffs' and the Classes' biometrics when the initial purpose for collecting or obtaining such data has been satisfied.

75. On behalf of themselves and the Classes, Plaintiffs seek: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Classes by requiring Defendant to comply with BIPA's requirements for the possession of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

**SECOND CLAIM FOR RELIEF**
**FOR DAMAGES AGAINST DEFENDANT**
**VIOLATION OF 740 ILCS 14/15(B)**
**(By Plaintiffs on Behalf of the Class or, in the Alternative, the Minor Subclass)**

76.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

77.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Class against Defendants.

78.     BIPA requires companies to obtain informed written consent from individuals before acquiring their biometric data.  Specifically, BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information unless [the entity] first: (1) informs the subject … in writing that a biometric identifier or biometric information is being collected or stored … *and* (3) receives a written release executed by the subject of the biometric identifier or biometric information." 740 ILCS 14/15(b) (emphasis added).

79.     Defendant failed to comply with these BIPA mandates.

80.     Defendant is a corporation and does business in Illinois and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

81.     Plaintiffs and the Class are individuals who have had their "biometric identifiers" collected and/or captured by Defendant, as explained in detail above.  *See* 740 ILCS 14/10.

82.     Plaintiffs' and the Class's biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA.  *See* 740 ILCS 14/10.

83.     Defendant systematically and automatically collected, captured, used, and stored Plaintiffs' and the Class's biometric identifiers and/or biometric information without first obtaining the written release required by 740 ILCS 14/15(b)(3).

84. Defendant failed to inform Plaintiffs and the Class in writing that their biometric identifiers and/or biometric information were being collected and stored in violation of 740 ILCS 14/15(b)(1).

85. By collecting, capturing, storing, and/or using Plaintiffs' and the Class's biometric identifiers and biometric information as described herein, Defendant violated Plaintiffs' and the Class's rights to privacy in their biometric identifiers and/or biometric information as set forth in BIPA. *See* 740 ILCS 14/1, *et seq.*

86. On behalf of themselves and the Class, Plaintiffs seek: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Class by requiring Defendant to comply with BIPA's requirements for the collection, captures, storage, and use of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and the proposed Class, respectfully request that this Court enter an Order:

A. Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff as the representative of the Class, and appointing their counsel as Class Counsel;

B. Declaring that Defendant's actions, as set out above, violate BIPA §§ 15(a) and 15(b), 740 ILCS 14/15(a) and (b);

C. Awarding statutory damages of $5,000.00 for each and every intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2), or alternatively, statutory damages of $1,000.00 for each and every violation pursuant to 740 ILCS 14/20(1) if the Court finds that Defendant's violations were negligent;

D.    Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including, *inter alia*, an Order requiring Defendant to collect, store, and use biometric identifiers and/or biometric information in compliance with BIPA;

E.    Awarding Plaintiffs and the Class their reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3);

F.    Awarding Plaintiffs and the Class pre- and post-judgment interest, to the extent allowable; and

G.    Awarding such other and further relief as equity and justice may require.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

Dated: December 22, 2022         Respectfully submitted,

*/s/ Carl V. Malmstrom*
**WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLC**
Carl V. Malmstrom
111 W. Jackson Blvd., Suite 1700
Chicago, IL 60604
Tel: (312) 984-0000
Fax: (212) 686-0114
malmstrom@whafh.com

**WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP**
Benjamin Y. Kaufman*
270 Madison Ave.
New York, NY 10016
Tel: (212) 545-4600
Fax: (212) 686-0114
kaufman@whafh.com

**DON BIVENS PLLC**
Don Bivens*
15169 N. Scottsdale Rd., Suite 205
Scottsdale, AZ 85254
Tel: (602) 708-1450
don@donbivens.com

**pro hac vice forthcoming*

*Attorney for Plaintiff*

21